UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LINNETT PLUNKETT, ORAL PLUNKETT, OREL
PLUNKETT, ANTOINETT PLUNKETT, DEGUAN
ADAMS, LINETTE RICHARD, JUDITH PARKINSON,
WOODROW CAMPBELL, and CHASSIDY ADAMS,

                              Plaintiffs,

               -against-

U.S. BANK NATIONAL ASSOCIATION, MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.,
WELLS FARGO BANK N.A., and MORTGAGE
LENDERS NETWORK USA, INC.,

                            Defendants.
------------------------------------------------------------------------X

**MEMORANDUM
AND ORDER
24-CV-05479-SJB-LGD**

**BULSARA, United States District Judge:**

Plaintiffs Linnett Plunkett ("Plunkett"), Oral Plunkett, Orel Plunkett, Antoinett

Plunkett, Deguan Adams, Linette Richard, Judith Parkinson, Woodrow Campbell, and

Chassidy Adams (collectively "Plaintiffs"), proceeding *pro se*, commenced this action on

August 5, 2024, against Defendants U.S. Bank National Association ("U.S. Bank"),

Mortgage Electronic Registration Systems, Inc. ("MERS"), Wells Fargo Bank N.A.

("Wells Fargo"), and Mortgage Lenders Network USA, Inc. ("MLNU") (collectively

"Defendants")[1] for claims related to the mortgage and subsequent foreclosure of a

---

[1] Although the Complaint often refers to a "Defendant Fannie Mae," (*e.g.*, Compl.
dated Aug. 5, 2024 ("Compl."), Dkt. No. 1 ¶¶ 31, 40, 50(d)), "Fannie Mae" is not listed
on the Complaint's caption or on the Civil Cover Sheet as a defendant. (*See id.* at 1–2;
Civil Cover Sheet, Dkt. No. 1-1).  The Complaint also refers once to "Defendant
America's Servicing Co.," (Compl. ¶ 7), which is also not named on the Complaint's
caption or on the Civil Cover Sheet.  (*See id.* at 1–2; Civil Cover Sheet).

property located at 1596 Johnson Avenue, Elmont, New York 11003 (the "Property").

(Compl.).  Plaintiffs allege Defendants wrongfully foreclosed on the Property; made

fraudulent representations; intentionally inflicted emotional distress; committed slander

of title; violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Home

Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639, and the Real Estate

Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*; and engaged in elder

abuse.  (Compl. ¶¶ 62–119, 140–56, 162–70).  Plaintiffs seek to quiet title on the Property,

obtain declaratory relief regarding the Property, rescind their original loan, and recover

damages.  (*Id.* ¶¶ 120–139, 157–61).  Plaintiffs separately allege that U.S. Bank

committed fraud on the courts and were unjustly enriched.  (*Id.* ¶¶ 171–76).

On January 31, 2025, Defendants U.S. Bank and Wells Fargo each filed a motion

to dismiss.[2]  (U.S. Bank's Notice of Mot. to Dismiss dated Nov. 25, 2024 ("U.S. Bank's

Notice of Mot. to Dismiss"), Dkt. No. 29; Wells Fargo's Notice of Mot. to Dismiss dated

Nov. 25, 2024 ("Wells Fargo's Notice of Mot. to Dismiss"), Dkt. No. 30).  On March 26,

2025, Defendant MERS elected to join and adopt the arguments of U.S. Bank and Wells

Fargo in their respective motions.  (Letter dated Mar. 26, 2025 ("MERS's Letter"), Dkt.

No. 49).  For the reasons stated below, the Court grants the motions and directs the

Clerk of Court to remove U.S. Bank, MERS, and Wells Fargo from the docket.

---

[2] The motions to dismiss were served on Plaintiffs on November 25, 2024, and
November 26, 2024, but filed on the docket on January 31, 2025, after the briefing
schedule had ended.  (*See* Order dated Oct. 17, 2024; U.S. Bank's Affidavit of Service
dated Nov. 26, 2024, Dkt. No. 20-1; Wells Fargo's Affidavit of Service dated Nov. 26,
2024, Dkt. No. 21-1).

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

When a party proceeds *pro se*, the Court must liberally construe the litigant's submissions and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations omitted).

Broadly speaking, Plaintiffs contend that Defendants had no right to foreclose upon the Property; Defendants were fraudulent in their representations to Plaintiffs surrounding the underlying mortgage transaction; and Defendants caused Plaintiffs harm through their fraudulent conduct and foreclosure of the Property. (Compl. ¶¶ 62–176).

In moving to dismiss, Defendants attach a number of documents related to the mortgage on the Property (the "Mortgage"), the Mortgage note (the "Note"), the assignment of the Mortgage (the "Assignment"), and the foreclosure of the Property.[3]

---

[3] U.S. Bank submitted a declaration from counsel, (Decl. of Evan N. Soyer in Supp. of Def. U.S. Bank's Mot. to Dismiss dated Nov. 25, 2024 ("Soyer Decl."), Dkt. No. 29-2), that annexed the following documents: (1) a note executed by Plunkett on December 12, 2005, (Note dated Dec. 12, 2005 ("Note"), attached as Ex. 2 to Soyer Decl., Dkt. No. 29-4); (2) a mortgage executed by Plunkett on December 12, 2005, (Mortgage dated Dec. 12, 2005 ("Mortgage"), attached as Ex. 3 to Soyer Decl., Dkt. No. 29-5); (3) an assignment of the Mortgage from MERS to U.S. Bank, dated May 8, 2009, (Assignment of Mortgage to U.S. Bank dated May 8, 2009 ("U.S. Bank Assignment"), attached as Ex. 4 to Soyer Decl., Dkt. No. 29-6); (4) a copy of the summons, complaint, and notice of pendency filed in the state court foreclosure action in New York Supreme Court, Nassau County, captioned *U.S. Bank National Ass'n, as Trustee v. Linett Plunkett, et al.*,

Given the nature of Plaintiffs' claims and the allegations in the Complaint, the Court deems the Mortgage, the Assignment, and other relevant documents, *see supra* note 3, as incorporated by reference into the Complaint.  *E.g.*, *Harriott v. Nationstar Mortg. LLC*, No. 17-CV-4748, 2018 WL 4522102, at *1 (E.D.N.Y. Aug. 17, 2018), *report and recommendation adopted*, 2018 WL 4853045, at *1 (Sept. 28, 2018).  Separately, the Court takes judicial notice of the foreclosure action court records submitted by Defendants. *E.g.*, *id.*  From those documents and the Complaint, the Court considers the following facts on the motions to dismiss.

On December 12, 2005, Plunkett executed a note to MLNU in the amount of $508,000.  (Note at 1).  Simultaneously, Plunkett executed a mortgage with MERS, as nominee for lender MLNU, encumbering the Property in the amount of $508,000.

---

Index No. 9271/2009 ("Foreclosure Action"), (Foreclosure Action Summons, Compl., and Notice of Pendency ("Foreclosure Action Compl."), attached as Ex. 5 to Soyer Decl., Dkt. No. 29-7); (5) a copy of the Judgment of Foreclosure and Sale dated February 23, 2015, (Judgment of Foreclosure and Sale dated Feb. 23, 2015 ("Foreclosure Judgment"), attached as Ex. 6 to Soyer Decl., Dkt. No. 29-8; and (6) a copy of the Referee's Deed transferring the Property to U.S. Bank dated June 3, 2020, (Deed Transfer dated June 3, 2020, attached as Ex. 7 to Soyer Decl., Dkt. No. 29-9).

Wells Fargo also submitted a declaration from counsel, (Decl. of Andrew B. Messite in Supp. of Def. Wells Fargo's Mot. to Dismiss dated Nov. 25, 2024 ("Messite Decl."), Dkt. No. 31), that annexed the following documents: (1) a copy of the summons, complaint, and notice of pendency in the Foreclosure Action, (Foreclosure Action Compl., attached as Ex. B to Messite Decl., Dkt. No. 31-2); (2) the mortgage executed by Plunkett on December 12, 2005, (Mortgage, attached as Ex. C to Messite Decl., Dkt. No. 31-3); (3) a copy of the Judgment of Foreclosure and Sale dated February 23, 2015, (Foreclosure Judgment, attached as Ex. D to Messite Decl., Dkt. No. 31-4); and (4) a copy of the order denying Plunkett's motion to renew with respect to the Judgment of Foreclosure and Sale dated October 3, 2022, (Order Denying Renewal dated Oct. 3, 2022 ("Order Denying Renewal"), attached as Ex. E to Messite Decl., Dkt. No. 31-5).

(Mortgage at 2–3).  The Mortgage was recorded in the Office of the Nassau County Clerk on March 20, 2009.  (*Id.* at 1).  The Mortgage was then assigned to U.S. Bank, as trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX2, on May 8, 2009.  (U.S. Bank Assignment at 3; *see* Soyer Decl. ¶ 10).  Pursuant to the Assignment, U.S. Bank became—and continues to be—the holder of the Note and the assignee of record of the Mortgage.[4]  (Mem. of Law in Supp. of U.S. Bank's Mot. to Dismiss dated Nov. 25, 2024 ("U.S. Bank's Mem. of Law"), Dkt. No. 29-1 at 2).

On May 13, 2009, U.S. Bank commenced a foreclosure action in Nassau County Supreme Court, asserting that Plunkett had defaulted on the loan by failing to make the payment due on July 1, 2008, and any subsequent payments.  (Foreclosure Action Compl.).  The court issued a final Judgment of Foreclosure and Sale (the "Foreclosure Judgment") on February 23, 2015.  The Foreclosure Judgment determined that Plunkett was "barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said mortgaged premises[.]"  (Foreclosure Judgment at 8).

Six years after the Foreclosure Judgment was entered, Plunkett moved to renew and vacate the Foreclosure Judgment.  (Order Denying Renewal at 3–4).  The Nassau County Supreme Court denied the motion in its entirety.  (*Id.* at 4).

On August 5, 2024, Plaintiffs commenced this action as the alleged owner

---

[4] Neither U.S. Bank nor Wells Fargo attached a document evidencing assignment of the Note.  (*See* Soyer Decl.; Messite Decl.).

(Plunkett) and residents (all other Plaintiffs) of the Property.  (Compl. ¶¶ 1–2).
Plaintiffs' Complaint contains two sets of allegations: "Introductory Allegations," (*id.*
¶¶ 14–29), and "Specific Allegations."  (*Id.* ¶¶ 30–61).  The Introductory Allegations
describe a general process of mortgage securitization, assignment to a real estate
mortgage investment conduit trust, and the role of MERS in this process.  (*Id.* ¶¶ 17–25).
In this section, Plaintiffs allege that Defendants cannot establish that they have any
proper ownership or security interest in the Note, Mortgage, or Property.[5]  (*Id.* ¶¶ 26–
27).

        Plaintiffs next outline a series of allegations they believe show that Defendants
have no legal ownership or security interest in the Property.  (*See id.* ¶¶ 30–51).
Plaintiffs allege the Note securing the Property was "in favor of [Defendant MLNU],"
(Compl. ¶ 30), but never "properly transferred to Defendant, FANNIE MAE[.]"  (*Id.*
¶ 31).  (As noted, Fannie Mae is not a defendant.  *Supra* note 1.)  Furthermore, "neither
the Note and/or the Mortgage, or both, was assigned . . . by the closing date."  (Compl.
¶ 36).  And as a result, "any assignments of the Mortgage beyond the specified closing
date . . . are void."  (*Id.*).

        Plaintiffs further allege that MLNU qualified Plunkett for a loan which it "knew
or should have known that [Plunkett] could not qualify for or afford," and "knowingly,
liberally, greedily and without any regard for [Plunkett]'s rights sold [Plunkett] a

---

        [5] For most of the Complaint, Plaintiffs engage in group pleading, and do not
clarify which Defendant they mean when they refer to a single "Defendant."  (*See*
Compl.).

deceptive loan product." (*Id.* ¶ 53). "[A]fter making several mortgage payments [Plunkett] noticed that the principal balance was not decreasing." (*Id.* ¶ 57).  Concerned, Plunkett sent a Defendant (who is not identified) "a Qualified Written Request pursuant to RESPA." (*Id.*).  After the "Defendant failed or refused to respond," Plunkett determined this was an unlawful breach of contract and "began to cease payments on the loan to force the Defendant to honor their contract[.]" (*Id.*).

At that point, that Defendant "offered [Plunkett] a loan modification and principal reduction[.]" (Compl. ¶ 58).  The Defendant allegedly failed to follow through, but continued to make assurances even after they filed for foreclosure. (*Id.*). Plunkett alleges that the "Defendant never notified [Plunkett] that they were moving the foreclosure forward which is why she never had time to craft a defense . . . and never responded." (*Id.*).

Plaintiffs bring 13 causes of action in their Complaint: (1) lack of standing and wrongful foreclosure, (Compl. ¶¶ 62–83); (2) fraud in the concealment, (*id.* ¶¶ 84–92); (3) fraud in the inducement, (*id.* ¶¶ 93–100); (4) intentional infliction of emotional distress ("IIED"), (*id.* ¶¶ 101–11); (5) slander of title, (*id.* ¶¶ 112–19); (6) quiet title, (*id.* ¶¶ 120–27); (7) declaratory relief, (*id.* ¶¶ 128–39); (8) violation of TILA and HOEPA, (*id.* ¶¶ 140–49); (9) violation of RESPA, (*id.* ¶¶ 150–56); (10) recission, (*id.* ¶¶ 157–61); (11) elder abuse, (*id.* ¶¶ 162–170); (12) fraud upon the courts, (*id.* ¶¶ 171–75); and (13) unjust enrichment, (*id.* ¶ 176).[6]

---

[6] Plaintiffs, in addition to the remedies sought pursuant to these causes of action,

U.S. Bank and Wells Fargo moved to dismiss the Complaint on November 25, 2024, and November 26, 2024, respectively.  (U.S. Bank's Notice of Mot. to Dismiss; Wells Fargo's Notice of Mot. to Dismiss; *see supra* note 2).  Both Defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (U.S. Bank's Mem. of Law at 1; Mem. of Law in Supp. of Def. Wells Fargo's Mot. to Dismiss dated Nov. 25, 2024 ("Wells Fargo's Mem. of Law"), Dkt. No. 32 at 1).  U.S. Bank also seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(5).  (U.S. Bank's Mem. of Law at 1).

More specifically, U.S. Bank seeks dismissal based on insufficient service; *Rooker-Feldman* abstention; *res judicata*; statutes of limitations; and failure to state a claim.  (U.S. Bank's Mem. of Law at 2).  Wells Fargo seeks dismissal based on *Rooker-Feldman* abstention; *res judicata* and collateral estoppel; statutes of limitations; and failure to state a claim.  (Wells Fargo's Mem. of Law at 2).  The undersigned granted MERS permission to join their arguments.  (Order dated Mar. 25, 2025; MERS's Letter).

Plaintiffs filed an opposition to Wells Fargo's motion to dismiss on February 10, 2025, several weeks after their deadline to serve such opposition had passed.[7]  (Resp. in

---

seek injunctive relief of an emergency stay of a pending eviction; a ban against "the Defendant" from engaging in elder abuse; and an extinguishing of the Mortgage, or alternatively, a modification of the Mortgage.  (Compl. at 32–33).

[7] On October 17, 2024, prior to the re-assignment of the case to the undersigned, Judge Joan M. Azrack denied U.S. Bank and Wells Fargo's respective motions for a premotion conference and set a briefing schedule for their respective motions to dismiss.  (Order dated Oct. 17, 2024).  Defendants were directed to serve their motions by November 25, 2024; Plaintiffs were directed to serve their response in opposition by January 10, 2025; and Defendants were directed to serve their reply briefs by January 31, 2025.  (*Id.*).

Opp'n to Wells Fargo's Mot. to Dismiss dated Feb. 10, 2025 ("Pls.' Opp'n to Wells Fargo"), Dkt. No. 35).  Wells Fargo filed a reply in support of their motion to dismiss. (Reply in Supp. of Def. Wells Fargo's Mot. to Dismiss dated May 7, 2025, Dkt. No. 64).

Plaintiffs filed another belated opposition—to U.S. Bank's motion to dismiss—on April 8, 2025.  (Resp. in Opp'n to U.S. Bank's Mot. to Dismiss dated Apr. 7, 2025 and Apr. 8, 2025 ("Pls.' Opp'n to U.S. Bank"), Dkt. No. 55).  U.S. Bank did not request an opportunity to respond to Plaintiffs' opposition.  (U.S. Bank's Letter dated Apr. 9, 2025, Dkt. No. 56).  Despite their lateness, the Court has considered the arguments raised in Plaintiffs' opposition briefs.

<u>DISCUSSION</u>

I.    Insufficient Service of Process

"Federal Rule of Civil Procedure 12(b)(5) 'provides for dismissal of an action if service of process was not timely effected in accordance with Federal Rule of Civil Procedure 4(m).'"  *Tung v. Hemmings*, No. 19-CV-5502, 2021 WL 4147419, at *2 (E.D.N.Y. Sept. 13, 2021) (quoting *George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 442 (S.D.N.Y. 2016)).  Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice[.]"  Fed. R. Civ. P. 4(m).

"When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service."  *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (alteration omitted).  A "[p]laintiff must meet this burden by making a prima facie case of proper service through specific factual allegations and any supporting

materials." *Tung*, 2021 WL 4147419, at *2 (quoting *Sikhs for Just. v. Nath*, 850 F. Supp. 2d 435, 440 (S.D.N.Y. 2012)). "In evaluating a motion to dismiss based on insufficient service of process, the court 'must consider information outside the complaint to determine whether service was sufficient.'" *Id.* (quoting *Corley v. Vance*, 365 F. Supp. 3d 407, 431 (S.D.N.Y. 2019), *aff'd sub nom.*, *Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020)). "[T]he simple fact that [the defendant] obtained a copy of the . . . complaint against [him] is insufficient for service to be deemed effective under New York law." *Stair v. Calhoun*, No. 12-CV-6121, 2015 WL 1476454, at *8 (E.D.N.Y. Mar. 31, 2015) (quoting *Gerena v. Korb*, 617 F.3d 197, 202 (2d Cir. 2010)).

Rule 4(h) provides that service on a corporation may proceed in one of two ways. A plaintiff may deliver a copy of the summons and complaint to an officer, managing or general agent, or other agent of the corporation authorized under law to receive process. Fed. R. Civ. P. 4(h)(1)(B). Alternatively, a plaintiff may serve a corporation "in the manner prescribed by Rule 4(e)(1) for serving an individual[,]" which allows for service according to state law in which the federal district court is located or where service is made. *Id.* R. 4(h)(1)(A); *see also id.* R. 4(e)(1). If relying on state procedure, under New York law, a corporation can be served through "an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." C.P.L.R. § 311(a)(1). Neither federal nor New York state law permits service on a corporation via mere mailing. *See Terrell v. NBC Universal Media LLC*, No. 18-CV-2354, 2019 WL 3206131, at *2 (E.D.N.Y. July 16, 2019). Subject to alternatives not relevant here, "[b]oth federal and New York

law require that a corporation be served through personal service on a corporate officer or agent[.]" *Tung*, 2021 WL 4147419, at *3.

    a. U.S. Bank

Service was improper as to U.S. Bank, a corporation. It appears that Plaintiffs attempted to serve U.S. Bank twice, both times via certified mail. Plaintiffs first served "certified copies of the summons and complaint" on U.S. Bank via certified mail on August 2, 2024. (Proof of Service dated Aug. 2, 2024 ("Proof of Service on August 2, 2024"), attached as Ex. to Compl, Dkt. No. 1 at 39). Notably, this service was completed *prior* to the issuance of a summons as to U.S. Bank by the Clerk of Court on August 6, 2024. (Summons in a Civil Action dated Aug. 6, 2024 ("Summons Issued"), Dkt. No. 3 at 1). Plaintiffs then served U.S. Bank via certified mail again on August 6, 2024. (Proof of Service dated Aug. 6, 2024 ("Proof of Service on August 6, 2024"), Dkt. No. 7 at 5–6). Neither affidavit suggests that personal service upon anyone related to U.S. Bank was made. (*Id.*; Proof of Service on August 2, 2024). Because corporations cannot be served via certified mail, the service on U.S. Bank was inadequate. *E.g.*, *Terrell*, 2019 WL 3206131, at *2. And because the Complaint was filed on August 5, 2024, more than 90 days have passed without adequate service.

Plaintiffs' opposition ignores—and therefore fails to respond to—U.S. Bank's argument that it was never served properly. (Pls.' Opp'n to U.S. Bank ). In light of Plaintiffs' failure to meet their burden of proving adequate service, the claims against U.S. Bank must be dismissed without prejudice. *See Cioce v. Cnty. of Westchester*, 128 F. App'x 181, 183 (2d Cir. 2005) ("Rule 4(m) provides that the district court shall, upon

motion or on its own initiative after notice to the plaintiff, dismiss without prejudice any action in which service of the summons and complaint has not been made[.]"); *e.g.*, *Pierre v. Macy's, Inc.*, No. 16-CV-2556, 2018 WL 10127013, at \*4–\*5 (E.D.N.Y. Mar. 29, 2018) (dismissing without prejudice *pro se* plaintiff's claims against corporate and individual defendant for "failure to effect service" within 90 days of filing the complaint). All claims against U.S. Bank—including claims for fraud upon the courts and unjust enrichment, being solely brought against U.S. Bank—are dismissed without prejudice.[8]

> b. MERS

Service was also improper as to MERS, a corporation. Plaintiffs served MERS through the same method as they served U.S. Bank—certified mail—and on the same dates. As with U.S. Bank, the first attempt at service occurred prior to the issuance of the summons as to MERS, (Proof of Service on August 2, 2024; Summons Issued at 2), and neither affidavit indicates personal service upon anyone related to MERS. (Proof of Service on August 2, 2024; Proof of Service on August 6, 2024 at 1–2). More than 90 days have passed since the Complaint was filed without adequate service as to MERS. Because MERS joined and adopted the arguments of U.S. Bank—which included U.S. Bank's argument regarding insufficient service of process—the claims against MERS are also dismissed without prejudice.[9] *See, e.g.*, *Saunders v. Bank of Am.*, No. 12-CV-9201,

---

[8] The claims against U.S. Bank are counts 1 through 13. (Compl. ¶¶ 171–76).

[9] The claims against MERS are counts 1 through 11. (Compl. ¶¶ 62–170).

2014 WL 5089501, at *3 (S.D.N.Y. Sept. 22, 2014) (allowing a defendant to incorporate the arguments of another defendant's motion to dismiss, in the interest of justice, and granting both defendants' motions to dismiss) (adopting report and recommendation).[10]

II.     Lack of Subject Matter Jurisdiction

Where a party has made both a Rule 12(b)(1) motion *and* a Rule 12(b)(6) motion, and the court concludes that there is no subject matter jurisdiction, it is appropriate to avoid a decision on the Rule 12(b)(6) motion.  That is because the absence of subject matter jurisdiction results in dismissal of the complaint.  *See J.J. Cranston Constr. Corp. v. City of New York*, 602 F. Supp. 3d 373, 377 (E.D.N.Y. 2022) ("When a court is faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6), the court must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." (quotations omitted)); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (4th ed. 2024).

"A case is properly dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when the district court lacks the statutory or

---

Because service of process is necessary for the Court to obtain personal jurisdiction over U.S. Bank and MERS, it cannot reach the other arguments for dismissal.  *See, e.g.*, *Militinska-Lake v. Kirnon*, No. 22-CV-2667, 2023 WL 7648511, at *1 (2d Cir. Nov. 15, 2023).

[10] Wells Fargo did not assert insufficient service of process in its Rule 12 motion. (*See* Wells Fargo's Mem. of Law).  Any such defense is therefore waived.  *Khan v. Khan*, 360 F. App'x 202, 204 (2d Cir. 2010) ("[T]he defense of insufficient service of process may be waived by a party's failure to either raise it in a motion under Rule 12(b) of the Federal Rules of Civil Procedure or to include it in a responsive pleading[.]").

constitutional power to adjudicate it." *Razi Sch. v. Cissna*, 519 F. Supp. 3d 144, 148 (E.D.N.Y. 2021) (alteration omitted) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *DeMaria v. N.Y. State Unified Court Sys.*, No. 23-CV-3627, 2024 WL 1076543, at *3 (S.D.N.Y. Mar. 12, 2024) (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

The Court concludes it lacks subject matter jurisdiction over the following claims—lack of standing and wrongful foreclosure, slander of title, quiet title, declaratory relief, and recission—which are barred by the *Rooker-Feldman* doctrine. And Plaintiffs' remaining claims—fraud in the concealment, fraud in the inducement, violations of TILA, HOEPA, and RESPA, IIED, and elder abuse—though not barred by *Rooker-Feldman*, are otherwise dismissed as a matter of law for failure to state a claim.

Wells Fargo argues this Court lacks subject matter jurisdiction over Plaintiffs' claims because they are barred by the *Rooker-Feldman* doctrine. (Wells Fargo's Mem. of Law at 5–8). "The Supreme Court has explained that *Rooker-Feldman* bars 'a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court.'" *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994)). "*Rooker-Feldman* 'is

confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'"  *Id.* at 67–68 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

The doctrine applies if: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Id.* at 68 (quoting *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014)).  Wells Fargo maintains—while unfortunately failing to apply *Rooker-Feldman* to each claim—in summary and conclusory fashion that Plaintiffs' claim is a "*de facto* (untimely) appeal" of the Foreclosure Judgment, and any decision in this case in Plaintiffs' favor would "contravene the final determinations" of the Foreclosure Action in violation of *Rooker-Feldman*.  (Wells Fargo's Mem. of Law at 7–8).  A more rigorous analysis is necessary.

Plunkett lost in state court when the Foreclosure Judgment was entered on February 23, 2015, and that judgment was rendered before this current action commenced in 2024.  (*See* Foreclosure Judgment; Compl.).  That means for each claim, the first and fourth elements of *Rooker-Feldman*'s bar apply.

"[T]he second requirement—that the plaintiff complains of an injury *caused* by a state-court judgment—is the 'core requirement from which the other *Rooker-Feldman* requirements derive.'"  *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018)

(alterations omitted) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005)). "[T]he following formula guides [a court's] inquiry: a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are *produced* by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Hunter*, 75 F.4th at 71 (quoting *Hoblock*, 422 F.3d at 88). "*Rooker-Feldman* does *not* bar claims based on an opponent's misconduct that *precedes* the state court proceeding, if the plaintiffs' alleged injuries were merely *ratified* by the state-court judgments rather than *caused* by them." *Id.* (quotations omitted). Therefore, "[i]f a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction[.]" *Saudi Basic Indus. Corp.*, 544 U.S. at 293 (quotations and alterations omitted).

Five of Plaintiffs' claims—lack of standing and wrongful foreclosure, slander of title, quiet title, declaratory relief, and recission—satisfy all the requirements of *Rooker-Feldman*. These are all injuries caused by the state court judgment foreclosing on the Property, and in seeking their respective remedies, Plaintiffs are asking the Court to invalidate the Foreclosure Judgment.[11]

Plaintiffs' wrongful foreclosure claim argues that Defendants had no right to

---

[11] Though Wells Fargo was not a party to the Foreclosure Action, "the *Rooker-Feldman* doctrine does not require that the federal-court defendant have been a party in the prior state court proceeding." *Best v. Bank of Am.*, No. 14-CV-6546, 2015 WL 5124463, at *3 (E.D.N.Y. Sept. 1, 2015).

foreclose on the Property because they had not perfected a security interest in it. (Compl. ¶ 63). Framed as a lack of standing to obtain foreclosure, this assertion and claim directly challenges the state court's judgment of foreclosure and is thus barred by *Rooker-Feldman*. *See, e.g.*, *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 275 (S.D.N.Y. 2018). Plaintiffs' claims for slander of Plunkett's title to the Property, to quiet title to the Property in Plunkett's name, and to obtain declaratory relief regarding the ability of Wells Fargo to foreclose are in the same vein; they "challenge [the Foreclosure Judgment] and effectively request that the federal district court rule that the judgment was void." *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016). As such, these claims are also barred by *Rooker-Feldman*. *See, e.g.*, *id.* And, finally, so too is the claim for recission, which seeks to permit Plunkett to "rescind the loan and all accompanying loan documents," which is a different way of saying Plaintiffs wish to undo the foreclosure enabled by the Mortgage and Note. (Compl. ¶ 158). *See, e.g.*, *Udeogu v. Intercontinental Cap.*, No. 23-CV-2738, 2024 WL 4120379, at *5 (E.D.N.Y. June 25, 2024) (barring mortgage recission claim under *Rooker-Feldman*), *report and recommendation adopted*, 2024 WL 3949283, at *1 (Aug. 27, 2024).

In contrast, Plaintiffs' other claims seek damages for injuries flowing from Defendants' alleged conduct, not the Foreclosure Judgment. A constellation of Plaintiffs' claims—namely, fraud in the concealment, fraud in the inducement, and violations of TILA, HOEPA, and RESPA—involve alleged misrepresentations or failures to disclose material terms in the underlying Mortgage. (Compl. ¶¶ 85–90, 94–98, 142, 153–55). For example, the fraud in the concealment and inducement claims

relate to alleged fraud conducted by Defendants in connection with obtaining the Mortgage and Note—acts that took place years before the foreclosure of the Property. (*Id.* ¶¶ 85–89, 94–97; Foreclosure Judgment).  These claims all seek damages for injuries suffered prior to the foreclosure.  (*Id.* ¶¶ 91–92, 99–100, 147–49, 156).

"The *Rooker–Feldman* doctrine does not prevent a district court from reviewing a claim for damages . . . because the district court can determine damages liability without reviewing the propriety of the state court judgment."  *Worthy-Pugh*, 664 F. App'x at 21.  Because these remaining claims deal with alleged fraudulent conduct by Defendants in the original loan, and do not seek to challenge the validity of the Foreclosure Judgment, they are not barred by *Rooker-Feldman*.  *See, e.g., Vossbrinck*, 773 F.3d at 427 ("[Plaintiff's] *pro se* complaint can be liberally construed as asserting fraud claims that are not barred by *Rooker–Feldman*—because they seek damages from Defendants for injuries [Plaintiff] suffered from their alleged fraud, the adjudication of which does not require the federal court to sit in review of the state court judgment[.]"); *Beasley v. Indy Mac Bank*, No. 16-CV-4629, 2018 WL 1611667, at *7 (E.D.N.Y. Feb. 26, 2018) ("[I]t is this underlying alleged conduct—the alleged misrepresentations and failures to disclose related to the mortgage loan's origination, servicing, and securitization . . . for which Plaintiff seeks redress . . . . The state court judgment and alleged conduct forming the basis for Plaintiff's claims are therefore independent and separate . . . precluding application of *Rooker-Feldman*."), *report and recommendation adopted*, 2018 WL 1611382, at *1 (Mar. 31, 2018); *Francis v. Fed. Nat'l Mortg. Ass'n*, No. 20-CV-5863, 2023 WL 2707098, at *6 (E.D.N.Y. Mar. 30, 2023) ("*Rooker-Feldman* does not bar

Plaintiff's additional claims to the extent they seek relief for damages arising from Defendants' alleged fraudulent conduct involving the assignment of the note prior to the judgment in the Foreclosure Action."), *report and recommendation adopted*, 2023 WL 6201738, at *1 (Sept. 22, 2023); *Jones v. HSBC Bank USA Nat'l Ass'n*, No. 23-CV-7773, 2024 WL 2766515, at *6 (E.D.N.Y. May 30, 2024) (finding *Rooker-Feldman* did not bar TILA or RESPA claims); *Mohamed v. World Sav. Bank, FSB*, No. 15-CV-5934, 2016 WL 8711440, at *4 (E.D.N.Y. Sept. 30, 2016) (finding *Rooker-Feldman* did not bar TILA, RESPA, or HOEPA claims).

The same is true for Plaintiffs' claim of intentional inflection of emotional distress, which alleges severe emotional distress flowing from and after the foreclosure. (Compl. ¶¶ 105–11). Plaintiffs' elder abuse claim similarly alleges "intense psychological pressure and discomfort" caused by Defendants' conduct. (*Id.* ¶¶ 167–68). These claims only seek damages and do not require the Court to review the validity of the Foreclosure Judgment. (*Id.* ¶¶ 111, 164). As such, they too do not implicate *Rooker-Feldman*. *See, e.g.*, *Francis*, 2023 WL 2707098, at *7 ("*Rooker-Feldman* does not bar review of Plaintiff's claims for . . . intentional inflection of emotional distress to the extent these claims seek damages for Defendants' alleged underlying fraudulent conduct[.]").

Accordingly, the Court dismisses several of Plaintiffs' claims against Wells Fargo—for lack of standing and wrongful foreclosure, slander of title, quiet title,

declaratory relief, and recission—for lack of subject matter jurisdiction.[12]  These claims are dismissed without prejudice.  The Court proceeds to Wells Fargo's Rule 12(b)(6) arguments for the remaining claims: fraud in the concealment, fraud in the inducement, violations of TILA, HOEPA, and RESPA, IIED, and elder abuse.[13]

## III.    Failure to State a Claim

"The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of . . . claims for relief."  *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018) (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)).  In deciding such a motion, the Court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (quotations and alteration omitted); *Amadei*, 348 F. Supp. 3d at 155 ("[W]hen reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of [the non-moving party].").

For the purpose of this motion, the Court is "required to treat" the Complaint's "factual allegations as true, drawing all reasonable inferences in favor of Plaintiffs to the extent that the inferences are plausibly supported by allegations of fact."  *In re Hain*

---

[12] These claims are counts 1, 5, 6, 7, and 10.  (Compl. ¶¶ 62–83, 112–39, 157–61).

[13] In their response to Wells Fargo, Plaintiffs did not address Wells Fargo's *Rooker-Feldman* arguments.  (*See* Pls.' Opp'n to Wells Fargo).  In a section addressing subject matter jurisdiction, Plaintiffs cite mostly California state cases discussing general principles related to standing and subject matter jurisdiction.  (*Id.* at 3–4).

*Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021). The Court "therefore recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the court, as we have no way of knowing at this stage what are the true facts." *Id.* In addition to the allegations in the Complaint, the Court considers documents that are incorporated by reference, documents which are integral to the pleading, and documents of which the Court takes judicial notice, including those filed in another court proceeding. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." (quotations and citation omitted)); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quotations omitted)).

Once the facts are construed in the light most favorable to the non-moving party—here, Plaintiffs—to avoid dismissal, there must be sufficient facts that allege a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quotations

21

omitted)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  A complaint must contain more than "naked assertion[s] devoid of further factual enhancement."  *Id.* (quotations omitted).  In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; Fed. R. Civ. P. 8(a)(2).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citation omitted).  The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679; *see also Escamilla v. Young Shing Trading Co.*, No. 17-CV-652, 2018 WL 1521858, at *2 (E.D.N.Y. Jan. 8, 2018), *report and recommendation adopted*, 2018 WL 1033249, at *3 (Feb. 23, 2018).

     a.  *Res Judicata* and Collateral Estoppel

Wells Fargo contends that, to the extent the Complaint is not dismissed pursuant to *Rooker-Feldman*, *res judicata* and collateral estoppel alternatively require full dismissal.[14]  (Wells Fargo's Mem. of Law at 5, 8–11).

---

[14] Wells Fargo seeks dismissal based on *res judicata* and collateral estoppel under Rule 12(b)(1), lack of subject matter jurisdiction, as opposed to Rule 12(b)(6), failure to state a claim.  (*See* Wells Fargo's Mem. of Law at 2, 8–11).  However, "[w]hen a defendant raises the affirmative defense of *res judicata* or collateral estoppel 'and it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law,' dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate."  *Austin v. Downs, Rachlin & Martin Burlington St. Johnsbury*, 270 F. App'x 52, 53 (2d Cir. 2008) (quoting

*Res judicata*, or claim preclusion, "precludes not only litigation of claims raised and adjudicated in a prior litigation between the parties (and their privies), but also of claims that might have been raised in the prior litigation but were not." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015). "To prove the affirmative defense [of *res judicata*] a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000).

Collateral estoppel, or issue preclusion, "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to [a] prior judgment.'" *Cayuga Nation v. Tanner*, 6 F.4th 361, 374 (2d Cir. 2021) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)). "A party may invoke issue preclusion only if: '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party [raising the issue] had a full and fair opportunity to litigate the issue [in the prior proceeding]; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Id.* (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288-89 (2d Cir. 2002)).

Wells Fargo's brief summarily concludes—as it did with its arguments

---

*Conopco, Inc. v. Roll Int'l.*, 231 F.3d 82, 86–87 (2d Cir. 2000)).

pertaining to *Rooker-Feldman*—that the Complaint should be dismissed pursuant to *res judicata* and collateral estoppel. (Wells Fargo's Mem. of Law 8–11). Without further analysis of the applicability of these complex doctrines to each of Plaintiffs' surviving claims, based on a thorough inquiry into the Foreclosure Action and the parties, claims, and issues involved therein, the Court declines to, and cannot, dismiss on the basis of such cursory arguments.

> b. Statutes of Limitations

Wells Fargo argues that Plaintiffs' claims for fraud and violations of TILA, HOEPA, and RESPA are time-barred. (*Id.* at 11–13).

Pursuant to New York C.P.L.R. § 213(8), the limitations period for fraud is six years: "the time within which [an action based upon fraud] must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." In their claims for fraud in the concealment and fraud in the inducement, Plaintiffs allege fraud in the underlying Mortgage and loan transaction. (Compl. ¶¶ 85–89, 94–97). Plunkett entered into the Mortgage on December 12, 2005, (Mortgage); the Foreclosure Action commenced on May 13, 2009, (Foreclosure Action Compl.); and the final Foreclosure Judgment was issued on February 23, 2015, (Foreclosure Judgment). Since more than six years—the greater of the two methods of counting time under the statute of limitations—have passed since any and all of these events, the Court dismisses any

claim sounding in fraud against Wells Fargo with prejudice.[15]  *See, e.g.*, *Beasley*, 2018 WL 1611667, at *9 (finding untimely plaintiff's claims for fraud and fraudulent inducement brought nine years after state foreclosure judgment).

TILA, HOEPA, and RESPA each contain specific statute of limitations provisions, none of which Plaintiffs satisfy.  TILA requires a claim to be brought "within one year from the date of the occurrence of the violation[.]"  15 U.S.C. § 1640(e).  HOEPA, an amendment to TILA, allows an action to be brought "before the end of the 3-year period beginning on the date of the occurrence of the violation."  *Id.*; *see Barker v. Rokosz*, 740 F. Supp. 3d 187, 208 (E.D.N.Y. 2024), *reconsideration denied*, 2024 WL 3904871 (E.D.N.Y. Aug. 22, 2024).  The "'date of the occurrence of the violation' generally means the date on which the plaintiff entered into the loan transaction at issue."  *Barker*, 740 F. Supp. 3d at 208 (quoting *Clement v. United Homes, LLC*, 914 F. Supp. 2d 362, 369 n.3 (E.D.N.Y. 2012)).  Given the date of the Note and Mortgage (namely 2005) and the nearly two decades that have passed since then, Plaintiffs' claim against Wells Fargo for violations of TILA and HOEPA is dismissed with prejudice as untimely.[16]

RESPA requires an action to be brought "within 3 years in the case of a violation of section 2605," which is related to servicing of mortgage loans and administration of escrow accounts, and "1 year in the case of a violation of section 2607 or 2608," which is related to the prohibition of kickbacks and unearned fees (§ 2607) and title companies

---

[15] The claims for fraud are counts 2 and 3 and are labeled, respectively, fraud in the concealment and fraud in the inducement.  (Compl. ¶¶ 84–100).

[16] The claim for violations of TILA and HOEPA is count 8.  (Compl. ¶¶ 140–49).

(§ 2608).  12 U.S.C. § 2614.  Tolling starts "from the date of the occurrence of the violation."  *Id.*  Plaintiffs allege that Defendants violated RESPA when they failed to respond to a Qualified Written Request, failed to disclose they would "gain a financial benefit," and received payments that were "misleading and designed to create a windfall."  (Compl. ¶¶ 57, 153, 155).  The latest date by which such violation could have occurred is prior to the Foreclosure Action, because Plaintiffs ceased payments on the Mortgage after Defendants' failure to respond to the Qualified Written Request.  (*Id.* ¶ 57).  Given the date of the commencement of the Foreclosure Action—May 13, 2009— Plaintiffs have no timely claim under any provision of RESPA.  (*See* Foreclosure Action Compl.).  Accordingly, Plaintiffs' RESPA claim against Wells Fargo is also dismissed with prejudice.[17]

        c.   IIED and Elder Abuse

        Finally, Wells Fargo argues that Plaintiffs have failed to sufficiently plead each of their causes of action.  (Wells Fargo's Mem. of Law at 13–27).  The Court finds that all remaining claims against Wells Fargo—IIED and elder abuse—are dismissed for failure to state a claim.

        In New York, an IIED claim requires four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress."  *Friedman v. Self Help Cmty. Servs., Inc.*, 647 F. App'x 44, 47 (2d Cir. 2016) (quoting *Bender v. City of New York*,

---

[17] The RESPA claim is count 9.  (Compl. ¶¶ 150–56).

78 F.3d 787, 790 (2d Cir. 1996)).

Here, Plaintiffs allege that Plunkett suffered "lack of sleep, anxiety, and depression," as well as "many sleepless nights, severe depression, lack of appetite, and loss of productivity at its [sic] place of employment" as a result of the allegedly fraudulent attempts to foreclose on the Property. (Compl. ¶¶ 105, 108, 110). Wells Fargo argues that "[t]he filing of a foreclosure action does not rise to the level of extreme emotional distress required[.]" (Wells Fargo's Mem. of Law at 18). While it is unclear what the scope of Wells Fargo's argument is, the Court nevertheless agrees that Plaintiffs fail to make out a claim.

"New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Bender*, 78 F.3d at 790. This conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993) (quotations omitted).

Foreclosing on a property, or attempts thereof, does not constitute conduct "so outrageous" and "extreme in degree" requisite of the first element of an IIED claim. *See, e.g.*, *Calizaire v. Mortg. Elec. Registration Sys., Inc.*, No. 14-CV-1542, 2017 WL 895741, at *8 (E.D.N.Y. Mar. 6, 2017) ("[K]nowingly initiat[ing] foreclosure proceedings without the right to do so . . . does not constitute the 'outrageous conduct' necessary to support an IIED claim."), *aff'd*, 763 F. App'x 124 (2d Cir. 2019).

Moreover, Wells Fargo was not involved in the Foreclosure Action, and therefore

could not have intentionally caused any emotional distress. (*See* Foreclosure Action; Wells Fargo's Mem. of Law at 3). Plaintiffs also do not allege a causal connection between Wells Fargo specifically and the emotional distress Plunkett suffered. (Compl. ¶¶ 101–11).

In response, Plaintiffs fail to address their IIED claim, only vaguely concluding that the "Failure to State a Claim doctrine" does not apply. (Pls.' Opp'n to Wells Fargo at 4). Because, at minimum, the first three prongs of an IIED claim are absent, the claim against Wells Fargo is dismissed with prejudice.[18]

Plaintiffs' final claim against Wells Fargo is for elder abuse. Plaintiffs allege that Defendants, "aware of the Plaintiff's advanced age," "supplied false testimony and flawed paperwork" in an abusive manner violative of state and federal law. (*Id.* ¶¶ 164, 167–69). Defendants' conduct, Plaintiffs allege, constitutes emotional and financial abuse under "New York State's Elder Abuse Prevention Act of 2017." (*Id.* ¶¶ 163, 169–70).

"Elder abuse" is not a recognized cause of action in New York. *See Gilbert v. Gilbert*, No. 02-CV-3728, 2003 WL 22790940, at *2 (S.D.N.Y. Nov. 25, 2003) ("[N]either federal nor New York law recognizes a cause of action for 'elder abuse.'") (adopting report and recommendation). And there is no "Elder Abuse Prevention Act" in New York that the Court can locate. Accordingly, the Court dismisses Plaintiffs' cause of

---

[18] The IIED claim is count 4. (Compl. ¶¶ 101–11).

action against Wells Fargo for elder abuse with prejudice.[19]

## IV.   Leave to Amend

In their responses to Defendants' motions to dismiss, Plaintiffs have not requested leave to amend their Complaint.  (Pls.' Opp'n to U.S. Bank; Pls.' Opp'n to Wells Fargo).  "The court should freely give leave [to amend a complaint] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[A] *pro se* complaint should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quotations omitted).  However, leave to amend may be denied if amendment would be futile.  *Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013).

Any amendment for the claims brought solely against U.S. Bank—a Defendant dismissed for insufficient service of process upon it—would be futile.  *See, e.g.*, *Heuser v. City of Glen Cove*, No. 21-CV-2018, 2023 WL 11852409, at *13 (E.D.N.Y. June 30, 2023) ("No amendment could cure [Plaintiff's] failure to timely serve Defendants."), *report and recommendation adopted*, 2025 WL 373636, at *1 (E.D.N.Y. Feb. 3, 2025).

Plaintiffs' claims for lack of standing and wrongful foreclosure, slander of title, quiet title, declaratory relief, and recission are barred under *Rooker-Feldman*, and their claims for fraud in the concealment, fraud in the inducement, and violations of TILA, HOEPA, and RESPA are time-barred, so any amendment would be futile.  *See Harriott*,

---

[19] The elder abuse claim is count 11.  (Compl. ¶¶ 162–70).

2018 WL 4522102, at *12 (denying amendment where claims were time-barred and precluded from review by *Rooker-Feldman*); *see also Gross v. Intratek Comput. Inc.*, No. 22-CV-7440, 2023 WL 144129, at *3 (E.D.N.Y. Jan. 10, 2023) ("Where a complaint has been dismissed for lack of subject matter jurisdiction, denial of leave to amend on the basis of futility may be appropriate."); *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 68 (E.D.N.Y. 2015) ("Courts may deny a motion to amend where the proposed claims would be time-barred and therefore futile.").

Because the IIED claim is against Wells Fargo, an entity not involved in the Foreclosure Action, and the claim is based on a legally valid foreclosure—one that cannot be challenged in federal court (and the time to do so in state court having long passed)—any amendment to it could not, as a matter of law, amount to a claim for IIED. And because elder abuse is not a cause of action recognized in New York and any claim alleging it could not be sustained, Plaintiffs are not granted leave to amend their claim for elder abuse.

CONCLUSION

For the reasons stated above, the Court grants Defendants U.S. Bank, MERS, and Wells Fargo's motions to dismiss. All of Plaintiffs' claims against U.S. Bank, including fraud upon the courts and unjust enrichment, and all claims against MERS are dismissed without prejudice for insufficient service of process. Plaintiffs' claims against Wells Fargo for lack of standing and wrongful foreclosure, slander of title, quiet title, declaratory relief, and recission are dismissed without prejudice for lack of subject matter jurisdiction. Plaintiffs' claims against Wells Fargo sounding in fraud and for

violations of TILA, HOEPA, RESPA, intentional infliction of emotional distress, and elder abuse are dismissed with prejudice.  The Clerk of Court is directed to remove Defendants U.S. Bank, MERS, and Wells Fargo from the docket.

SO ORDERED.

*/s/ Sanket J. Bulsara*   May 23, 2025
SANKET J. BULSARA
United States District Judge

Date:  May 23, 2025
       Central Islip, New York